David B. Rosenbaum, 009819
Brian K. Mosley, 030841
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2794
(602) 640-9000
drosenbaum@omlaw.com
bmosley@omlaw.com

Michael G. Bongiorno, *Pro Hac Vice*
WILMER CUTLER PICKERING HALE AND DORR LLP
250 Greenwich Street, 7 World Trade Center
New York, NY 10007
(212) 230-8800
Michael.bongiorno@wilmerhale.com

Peter A. Spaeth, *Pro Hac Vice*
James W. Prendergast, *Pro Hac Vice*
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
617-526-6000
Peter.spaeth@wilmerhale.com
James.prendergast@wilmerhale.com

***Attorneys for Defendants***

OSBORN MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Rameses Te Lomingkit, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Apollo Education Group, Inc. (f/k/a Apollo Group, Inc.), Peter V. Sperling, Gregory W. Cappelli, Brian L. Swartz, and William Pepicello,

Defendants.

No. 2:16-cv-00689-JAT

**CLASS ACTION**

**DEFENDANTS' REPLY SUPPORTING THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I. Plaintiffs' Falsity Allegations Are Inadequate ..... 1

A. Plaintiffs Fail to Allege Facts Demonstrating that Statements About the Platform Were False When Made ..... 1

B. Plaintiffs Fail to Identify an Actionable Statement ..... 4

i. Defendants Said Nothing Materially False or Misleading ..... 4

ii. Many Challenged Statements Are Inactionable Puffery ..... 7

II. Plaintiffs Fail to Allege a Strong Inference of Scienter ..... 9

A. Internal Report and "Town Meeting" Allegations are Insufficient ..... 9

B. The Core Operations Doctrine Does Not Apply ..... 11

C. Defendants Have Neither Admitted Scienter Nor Applied the Wrong Standard ..... 13

D. Stock Sales Do Not Show Scienter ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Acito v. IMCERA Group*,
47 F.3d 47 (2d Cir. 1995) ........ 14

*Allstate Life Insurance Co. v. Robert W. Baird & Co.*,
756 F. Supp. 2d 1113 (D. Ariz. 2010) ........ 11

*Berson v. Applied Signal Technology Inc.*,
527 F.3d 982 (9th Cir. 2008) ........ 12

*Carlton v. Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016), *amended on denial of reconsideration*, No. CV H-15-012, 2016 WL 3959164 (S.D. Tex. July 22, 2016) ........ 6

*Dudley v. Haub*,
No. 2:11-cv-05196, 2013 WL 1845519 (D.N.J. Apr. 30, 2013) ........ 13

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) ........ 5

*In re Apollo Group, Inc. Securities Litigation*,
No. CV-10-1735, 2011 WL 5101787 (D. Ariz. Oct. 27, 2011) ........ 14

*In re Apollo Group, Inc. Securities Litigation*,
No. CV-10-1735, 2012 WL 2376378 (D. Ariz. June 22, 2012) ........ 12

*In re Apple Computer Securities Litigation*,
672 F. Supp. 1552 (N.D. Cal. 1987), *on reconsideration*, 696 F. Supp. 490 (N.D. Cal. 1987), *aff'd in part, rev'd on other grounds*, 886 F.2d 1109 (9th Cir. 1989) ........ 8

*In re Century Aluminum Co. Securities Litigation*,
729 F.3d 1104 (9th Cir. 2013) ........ 2

*In re Countrywide Financial Corp. Derivative Litigation*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ........ 3, 4

*In re Dura Pharmaceuticals, Inc. Securities Litigation*,
452 F. Supp. 2d 1005 (S.D. Cal. 2006) ........ 8

*In re Grand Casinos Inc.*,
No. Civ-4-96-890, 2000 WL 34030564 (D. Minn. Mar. 28, 2000) ........ 13

*In re Intuitive Surgical Securities Litigation*,
No. 5:13-CV-01920, 2014 WL 7146215 (N.D. Cal. Dec. 15, 2014) ........ 10

*In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046 (9th Cir. 2014) .......... 12

*In re Peoplesoft, Inc.*, No. C 99-00472, 2000 WL 1737936 (N.D. Cal. May 25, 2000) .......... 3

*In re Salomon Analyst Level 3 Litigation*, 373 F. Supp. 2d 248 (S.D.N.Y. 2005) .......... 11

*In re Towne Services, Inc. Securities Litigation*, 184 F. Supp. 2d 1308 (N.D. Ga. 2001) .......... 3

*Karam v. Corinthian Colleges, Inc.*, No. CV 10-6523, 2012 WL 8499135 (C.D. Cal..Aug. 20, 2012) .......... 10

*Knox v. Yingli Green Energy Holding Co. Ltd.*, No. 215-CV-04003, 2017 WL 1013293 (C.D. Cal. Mar. 15, 2017) .......... 12

*Lasker v. N.Y. State Electric & Gas Corp.*, 85 F.3d 55 (2d Cir. 1996) (*per curiam*) .......... 8

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) .......... 8, 13

*No. 84 Employer- Teamster Joint Council Pension Trust Fund v. American West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) .......... 14

*Nursing Home Pension Fund, Local 144 v. Oracle Corp*, 380 F.3d 1226 (9th Cir. 2004) .......... 3

*Pehlivanian v. China Gerui Advanced Materials Group, Ltd.*, 153 F. Supp. 3d 628 (S.D.N.Y. 2015) .......... 13

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014) .......... 10, 12

*Pyramid Holdings, Inc. v. Inverness Medical Innovations, Inc.*, 638 F. Supp. 2d 120 (D. Mass. 2009) .......... 8

*Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014) .......... 12, 13

*Robb v. Fitbit, Inc.*, No. 16-cv-00151-SI, 2016 WL 6248896 (N.D. Cal. Oct. 26, 2016) .......... 8, 9

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) .......... 14

*Ross v. A.H. Robins Co.*,
607 F.2d 545 (2d Cir. 1979) ........ 3

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ........ 3

*S. Ferry LP v. Killinger*,
339 F. Supp. 2d 1121 (W.D. Wash. 2005), *order vacated on other grounds*, 542 F.3d 776 (9th Cir. 2008) ........ 8

*S. Ferry LP v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ........ 12

*S. Ferry LP, v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009) ........ 10, 11

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) ........ 13, 14

*Silverman v. Motorola, Inc.*,
No. 07 C 4507, 2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) ........ 3

*Todd v. STAAR Surgical Co.*,
No. CV-14-05263, 2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ........ 3

Defendants Apollo Education Group, Inc. ("Apollo" or the "Company") and individual defendants Peter V. Sperling; Gregory W. Cappelli; and Brian L. Swartz (collectively, the "Individual Defendants") submit this reply to Plaintiffs' April 12, 2017 Opposition ("Opp.") (ECF No. 90) to the Motion to Dismiss the Second Amended Complaint ("Motion" or "Mot.") (ECF No. 88).[1] As explained here and in the Motion, nothing in the new Complaint saves it from the deficiencies that the Court previously identified, or sets forth with particularity facts showing a strong inference of scienter.

## I. Plaintiffs' Falsity Allegations Are Inadequate

### A. Plaintiffs Fail to Allege Facts Demonstrating that Statements About the Platform Were False When Made

This Court previously held that Plaintiffs' witness allegations "lack clarity and objective indicators by which the Court can determine compliance with the PSLRA's pleading requirements," pointing to, among other things, the "absence of any temporal proximity between the confidential witnesses' ["CW"] observations and the statements identified as false." Order at 21-22, Mot. at 3. Plaintiffs have not remedied this defect. For instance, the Opposition asserts that "pervasive disruptions, outages and dysfunction of the online classroom increased in late 2013 and early 2014." Opp. at 2. But, with regard to "disruptions" and "dysfunction," the only purportedly "new" witness allegations are just more vague descriptions that do not identify which features of the system were supposedly disrupted and still fail to say when, or to what extent, any disruptions were occurring when the challenged statements were made.[2] As for "outages," none of the witnesses who discuss outages or blackouts identifies when the

---

[1] The Amended Class Action Complaint, ECF No. 82, is referred to as the "Complaint" or "SAC." The previously dismissed Consolidated Class Action Complaint, ECF No. 54, is referred to as the "CAC." The Court's February 16, 2017 Order, ECF No. 80, is referred to as the "Order."

[2] *See* Mot. at 3. The Opposition claims new CW 2's statement that unidentified employees asked to "go back to the legacy classroom" during town hall meetings, SAC ¶ 76, "showed the severity of the undisclosed dysfunction," Opp. at 15. However, the witness does not identify, much less quantify the extent of, any specific classroom issues discussed at the meetings. Plaintiffs' new allegations regarding anonymous online complaints filed in mid-2014, SAC ¶¶ 90-91, similarly fail to provide the dates or details of any issues complainants experienced. *See* Mot. at 3-4, 4 n.6.

outages occurred, much less how frequently, or for how long. As these witnesses all started no later than June 2012, 17 months before the start of the class period, the Complaint actually supports the notion that the referenced outages occurred well before the class period, during earlier stages of the platform's development.[3] That is not how fraud is plead under the PSLRA.

Other allegations fare no better. The Opposition asserts that "the Chief Information Officer provided data on purported multi-hour disruptions in executive summaries to Defendant Cappelli . . . ." Opp. at 2. However, the one witness who somehow "knew there were occasions" when the CIO shared summaries with Mr. Cappelli does not say how he or she knows the CIO in fact spoke to Mr. Cappelli, much less the dates or the content of discussions between the CIO and Mr. Cappelli. *See* SAC ¶ 84, Mot. at 15 n.19. And while Plaintiffs list the general job titles of employees whom Apollo allegedly laid off during a three-year expanse "from 2013 through 2015," the Complaint does not identify their responsibilities, if any, with regard to the platform, specify when the layoffs occurred, or identify any given layoff as the cause of any particular disruption. Mot. at 4 & n.6.

Similarly, allegations regarding the decision to replace the classroom still lack the support of any witnesses with first-hand knowledge, or any internal document identifying the timing or basis for the decision. The Opposition continues to cite a supposed industry participant to prop up Plaintiff's timing theory, Opp. at 14, but all of the defects remain that previously led this Court to strike this so-called "expert's" statements. *See* Order at 23. As before, this individual merely speculates *without first-hand knowledge* that "senior management had to be aware of the new classroom falling apart long before Apollo signed the contract that was disclosed in June 2015." SAC ¶ 100. Although this individual interviewed the CIO many months later (in December 2015), SAC ¶ 124, the Complaint cites nothing from that interview as support for his

---

[3] *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (where there are "two possible explanations," plaintiffs need to show "facts tending to exclude the possibility that the alternative explanation is true").

speculation. Thus, Plaintiffs have not remedied the absence of "objectively based reasoning for [the expert's] conclusions" or "other information from which the Court can determine the plausibility of the expert's opinion." *See* Order at 23.

Although the Opposition declares that "the Complaint is far more specific than required," Opp. at 13, the cases it cites do not support the proposition that Plaintiffs need show temporal proximity only in vague terms. *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000), held only that the plaintiffs did not need to specify the "exact date and time" defendants became aware of an issue, but confirmed that they needed to "supply some factual basis for the allegation that the defendants had reached [the relevant] conclusion at some point during the time period alleged.'" *Id.* at 91. The court also cited with approval an earlier decision holding that the plaintiff needed to plead when defendants became aware of safety issues. *Id.* (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir. 1979)). As for *Nursing Home Pension Fund, Local 144 v. Oracle Corp*, 380 F.3d 1226 (9th Cir. 2004), Plaintiffs merely select one witness statement in that case from a litany of evidence the court deemed collectively sufficient, including "hard numbers" and "sales data," *id.* at 1231-32, and try to leap from that to the assertion that they need not be specific to establish temporal proximity.[4] Nor does any consistency among witness accounts, Opp. at 13, assist Plaintiffs here. *In re*

[4] Plaintiffs cite, with no discussion, cases that sustained allegations about "disruptions," and "technical problem[s]," and declare that they support the sufficiency of the SAC. But an actual review of the cases shows that they are not analogous. *See, e.g.*, *Todd v. STAAR Surgical Co.*, No. CV-14-05263, 2016 WL 6699284, at *2,*6 (C.D. Cal. Apr. 12, 2016) (claims of "material disruptions" were supported by eyewitnesses who had observed defects in the company's products, as well as a detailed FDA inspection form); *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2008 WL 4360648, at *5-6 (N.D. Ill. Sept. 23, 2008) (court relied on several time-specific factual allegations about various problems); *In re Towne Servs., Inc. Sec. Litig.*, 184 F. Supp. 2d 1308, 1319-20 (N.D. Ga. 2001) (court did not excuse "attenuated relationship" between omissions and statements made, as Plaintiffs suggest, Opp. at 10, but sustained complaint on different ground); *In re Peoplesoft, Inc.*, No. C 99-00472, 2000 WL 1737936, at *2 (N.D. Cal. May 25, 2000) (defects were so serious that "major customers were complaining, refusing to pay, and even banding together and threatening to sue PeopleSoft over the defects").

*Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1058-59 (C.D. Cal. 2008), does not help Plaintiffs. [5]

The Opposition seeks cover from the Complaint's lack of clarity and particularity by mischaracterizing the nature of its statements and reports. For example, the Opposition claims "[a]n internal December 2012 report established that the online classroom did not work . . . ." Opp. at 2. The Complaint does not say that. Instead, according to the Complaint, the report merely indicated that "various [platform] components were not ready yet . . . the platform was not 'mature.'" SAC at ¶ 72. This obvious distinction – between "not work[ing]" and merely lacking maturity – is especially important given that Plaintiffs rely on the earlier December 2012 report to argue that statements made 11 months later in November 2013, and even further into the future, were false. *See* Mot. at 8. The witness's account of the December 2012 report supports fully the possibility that Apollo made significant changes to the platform as it matured between December 2012 and the later rollout. Indeed, the Complaint's own extensive catalogue of efforts by Apollo's IT personnel to implement a smooth operating platform undermines Plaintiff's suggestion that Apollo had not, in fact, "made some significant enhancements." *See* SAC ¶ 126.

**B. Plaintiffs Fail to Identify an Actionable Statement**

**i. Defendants Said Nothing Materially False or Misleading**

Plaintiffs continue to "present . . . statements out of context," Order at 25, and challenge statements that are "not inconsistent with the alleged facts that purport to make them false," Order at 24 & n.11; that "actually broach the subject of the online classroom's potential dysfunction," Order at 25; and that are "inactionable puffery," Order at 26-29. In sum, the Complaint contains no allegations tending to exclude the plausible inference that as the platform's development and eventual rollout continued,

[5] There, consistent CW statements supported an inference of company-wide culture only because, in addition to the level of detail they provided, the witnesses emanated from several geographic areas, spanned different levels of company hierarchy, and remained consistent across different time periods. *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d at 1058-59. The witnesses here fall well short of this standard.

Defendants learned more about the platform's capacities and deficiencies, and accurately revealed the extent of their knowledge as they went along.

For example, Plaintiffs mischaracterize the nature of statements by Mr. Swartz in their search for a false statement. *See* Opp. at 6-7, 11. In response to an analyst's question about a rise in the company's bad debt, Mr. Swartz identified the cause of that rise as principally "new enrollment trends hav[ing] improved." Opp. at 11 (citing SAC ¶¶ 148-52). The analyst never asked Mr. Swartz whether students were frustrated with the system, and, indeed, Mr. Swartz never denied or downplayed the possibility of some student dropouts from frustration with the new system. He merely explained his view that increases in bad debt were not solely attributable to such dropouts.[6]

The Opposition also repeatedly juxtaposes Defendants' statements with alleged facts that are actually consistent with those statements. Most importantly, the Company's consideration of switching to a third-party platform is fully consistent with its commitment to and optimism about fixing issues with the current platform, particularly where implementation of the switch would not happen until well after the announcement. *See* Mot. at 12-13.[7] Similarly, saying the rollout was complete did not imply that there was not a single student still using the old platform, so the witness statement that "there were definitely still undergrads using the old classroom [in June 2014]" does not show falsity. Indeed, as none of the witnesses quantifies how many students were allegedly not being served by the platform at any given time, the allegations fall far short of showing material falsity. *See* Mot. at 8-9.

---

[6] Mosley Decl., Ex. 17, at 10, ECF No. 64-2.

[7] Plaintiffs claim that the "temporal proximity" between the statements about the platform and the announcement of the switch shows falsity. Opp. at 11. But Plaintiffs omit the dates that undermine their argument: the 251 days between the statements about the platform and the disclosure of the replacement contract is more than three times longer than the 77-day period deemed a "shortness of time" evincing falsity in the sole case Plaintiffs cite. *See Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995) (characterizing the period between statements on January 14-16, 1992 and April 2, 1992 as "shortness of time"). In any event, the premise for the argument is false; deciding to replace the legacy platform was not inconsistent with optimism that the Company could fix the issues with it during the extended time after the announcement that it would take to implement the change.

Apollo might not have described the technical issues using Plaintiffs' preferred terms, but Apollo had no duty to do so. *See* Mot. at 1, 10-11. The allegations from confidential witnesses in *Carlton v. Cannon*, 184 F. Supp. 3d 428 (S.D. Tex. 2016), *amended on denial of reconsideration*, No. CV H-15-012, 2016 WL 3959164 (S.D. Tex. July 22, 2016), including allegations from the company's cofounder and chief technology officer, and people who worked at the plant in issue, were far more specific. They detailed, from personal observation, various problems in the plant, including "undersized equipment, tar buildup, unexpected production shutdowns, slow-moving conveyor systems . . . . [problems with] the vapor recovery unit, leaks, a city-wide blackout, instrument failures, and operating variability." *Id.* at 446. Based on that level of detail, the court concluded that defendants had mischaracterized the nature of the issues as mere "start up" ones. No such detail exists here.[8]

Plaintiffs also challenge certain of Apollo's risk warnings as misleading, claiming that they depicted only as possibilities issues that had already materialized. Opp. at 12 n.7. However, this Court previously held inactionable the October 21, 2014 disclosure that "disruptions and system malfunctions … may arise from [the online classroom] upgrade initiative" because the statement "actually broach[es] the subject of the online classroom's potential dysfunction." Order at 25 (citing CAC ¶ 221). The newly supplemented version in the Complaint, in fact, now explicitly identifies Defendants' public acknowledgment that outages had been occurring at the time. SAC ¶ 153 ("From time to time *we experience* outages of the information technology systems used by our students and by our employees, including system-wide outages." (emphasis added)). Similarly, Apollo's Form 10-K filed on January 8, 2015 acknowledged that "University of Phoenix's new online student classroom . . . *has experienced* technical

[8] Defendants never made the global materiality argument to which Plaintiffs appear to be responding, *i.e.*, that Defendants were under no obligation to talk at all about the platform. Opp. at 14-16. Consequently, much of Plaintiffs' argument is nothing but a straw man. Defendants did argue that they were under no obligation to disclose individual employees' opinions about the platform, Mot. at 12 n.15, and Plaintiffs offer no authority to the contrary.

challenges that in many cases have adversely impacted the user experience for our students." SAC ¶ 163 (emphasis added).

**ii. Many Challenged Statements Are Inactionable Puffery**

As to puffery, the Opposition is essentially an improper motion for reconsideration. The Court already has held many of the challenged statements to be puffery,[9] yet Plaintiffs now rely on many of the same cases to argue that the same and virtually indistinguishable statements[10] are not puffery. But there is no basis to seek reconsideration here.[11]

In any event, Plaintiffs' rapid-fire list of eight reasons why the statements were not puffery does not persuade. Several of the eight are merely rhetorical and/or circular: that Defendants used similar language in other contexts such as slides for investor presentations and in announcing the switch to a new platform, and that analysts asked questions in response to the statements.[12] Opp. at 18-19. The argument that a corrective stock price drop shows materiality, Opp. at 18, proves too much because by

---

[9] Order at 27-28 (dismissing as puffery statements that Apollo was "focused on offering a superior classroom experience," had made "meaningful progress" in "differentiat[ing]" UOP," wanted the classroom to be "second to none," and touting upgrades as "significant enhancements"), *id.* 28 n.14 (same as to statements that Apollo was "first and foremost focused on improving retention" by "improving the student experience" through the "new, modernized, and significantly upgraded online classroom," was building a "significantly easier to use platform" that is "much more efficient for [UOP] to administer," was "a different Company today" and was now "really centered around differentiating [UOP]," was "very, very focused on looking at both the service model as well as the learning model"; and statements characterizing the classroom as "a great platform" because it would "enhance[] the overall learning experience," stating "retention is [Apollo's] number one priority," and agreeing upgrades were "really [a] differentiating kind of proposition" and provided "an overall improved experience").

[10] *See, e.g.*, SAC ¶¶ 126 ("We're very excited"), 129 (Online classroom was "simple," "efficient," and "personal"), 132 ("[O]ur top priority is get[ting] the students to stay" and "ecosystem or a culture around retention"), 138 ("It's exciting," "big key," "top goal," "a lot more engagement and interaction," and "makes things simple"), 141 ("We have made meaningful progress on our strategy to differentiate [UOP]"), 142 ("[E]fficient" and "user friendly"), 160 ("[P]ut every necessary asset," "100% committed to fixing … the issues," and "doing everything necessary").

[11] *See* L.R. Civ. 7.2 (g) (requiring manifest error or showing of new facts or legal authority).

[12] In any event, Plaintiffs falsely equate the terms Apollo used to explain the switch – the functionality" and "user experience" of the legacy platform – with the puffery it used elsewhere – "efficiency," "simplicity" and "user friendliness." Opp. at 17.

Plaintiffs' logic, no statement as to which a plaintiff pleaded a corrective disclosure ever could be inactionable puffery. And in any case, Plaintiffs nowhere identify a corrective disclosure that specifically corrects any of the puffery here. The fact that the online classroom was important to Apollo's business strategy, and that Defendants said the features of the platform were "important," also does not plausibly negate that many statements were puffery.[13] The cases Plaintiffs cite are irrelevant and not analogous.[14]

Plaintiffs also argue that "context" renders the challenged puffing statements material. Opp. at 17-18. But they do not point to any context that lends verifiable objectivity to any of the statements at issue, as required by the Court. *See* Order at 28 (citing *Robb v. Fitbit, Inc.*, No. 16-cv-00151-SI, 2016 WL 6248896, at *6-8 (N.D. Cal. Oct. 26, 2016)); *id.* at 29 n.15 (citing *S. Ferry LP v. Killinger*, 339 F. Supp. 2d 1121, 1130 (W.D. Wash. 2005), *order vacated on other grounds*, 542 F.3d 776 (9th Cir. 2008)). When rejecting Plaintiffs' previous attempt to rely on *Fitbit* and *S. Ferry*, this Court explained that the plaintiffs in those cases pointed to specific language by the defendants that accompanied the challenged puffing statements and supplied them with content capable of objective verification. *Id*. Here, although Plaintiffs may now

[13] *See, e.g.*, *Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996) (*per curiam*) ("diversification [would] play an important role" is puffery); *In re Apple Computer Sec. Litig.*, 672 F. Supp. 1552, 1572 (N.D. Cal. 1987) ("'[I]mportant' … is such an emphatic statement of opinion that it rises to the level of puffery.… Any [company] with any pride in its product would say that its product is an important force or a significant achievement…."), *on reconsideration*, 696 F. Supp. 490 (N.D. Cal. 1987), *aff'd in part, rev'd on other grounds*, 886 F.2d 1109 (9th Cir. 1989); *see also Pyramid Holdings, Inc. v. Inverness Med. Innovations, Inc*., 638 F. Supp. 2d 120, 122 (D. Mass. 2009) ("[a]n important element of our strategy is to reduce costs through the use of efficient high quality manufacturing operations" is puffery).

[14] Contrary to Plaintiffs' claim, Opp. at 19, the Supreme Court in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) did not rule on any puffery argument, as one was not before it. *Id*. at 33 n.2 ("[C]ounsel for the United States … suggested that some of these statements might qualify as nonactionable 'puffery.' This question is not before us, as Matrixx has not advanced such an argument."). In *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1033 (S.D. Cal. 2006), the statements at issue were not puffery because plaintiffs alleged specific facts showing the defendants did not reasonably believe the statements. No such facts are alleged here. *See infra* at pp. 9-15.

provide more "context" for some statements, their effort to rely on non-existent "industry standards" to render them objectively verifiable fails.[15] *See* Opp. at 16-19.

Accordingly, for all these reasons, Plaintiffs still have not identified an actionable statement, or pleaded falsity with the requisite particularity.

**II. Plaintiffs Fail to Allege a Strong Inference of Scienter**

As in its initial opinion, the Court still need not specifically analyze scienter because Plaintiffs have not adequately alleged a false or misleading statement. Order at 42. Alternatively, even if the Court finds one or more statements to be false or misleading, Plaintiffs again have not shown that any statement was made with the requisite intend to defraud.

**A. Internal Report and "Town Meeting" Allegations are Insufficient**

The Opposition does not try to defend the vast majority of the Complaint's "must have known" allegations, and relies mostly on internal reports and "town halls" with Mr. Cappelli purportedly showing actual knowledge of adverse facts. But, while Plaintiffs name the various reports and mention in general terms the topics they covered, they still fail to point to any specific information in any particular report that (1) an Individual Defendant reviewed and (2) contemporaneously contradicted any statement at issue. For example, the Opposition touts "escalation reports" that allegedly were sent to "everyone from the CEO on down" on an hourly or even half-hourly basis. Opp. at 21 (citing SAC ¶¶ 83-84). Plaintiffs fail to allege how any such report contradicted any statement. And in this age of email blasts, any assumption that the top executives of a

---

[15] Claims of "efficiency," "simplicity," and "user-friendliness" are otherwise puffery. Mot. at 5. *See also* Order at 28 & n.14 (recognizing as "classic inactionable puffery" statement that Apollo was building "significantly easier to use platform" that is "much more efficient for [UOP] to administer"). Plaintiffs allege that, in the context of the June 2014 Investor Conference Call, the phrase "'more efficient and user friendly' provided a substantive assessment about classroom functionality compared to the legacy classroom that was specifically tied to Defendants' claim that the rollout was 'completed.'" Opp. at 17. The actual statement, however, contains no reference to the legacy classroom. *See* SAC ¶ 142. The reader is left to speculate "'[more efficient and user friendly] compared to what?'" *See Fitbit*, 2016 WL 6248896, at *7. More importantly, the Court previously dismissed this statement. *See* Order at 24.

large corporation regularly reviewed emails of this operational nature that were disseminated so widely and frequently is unreasonable.

The other internal report the Opposition touts, the CIO's "executive summary," fares no better. Opp. at 21 (citing SAC ¶ 84). Even assuming sending it "upwards" meant that it went to Mr. Cappelli – which is Plaintiffs' gloss on the Complaint but not actually alleged – the Opposition fails to describe the timing or content of the report except in vague terms (*e.g.*, "details about outages"). That is simply not enough to show that in connection with any particular statement, any Individual Defendant knowingly or recklessly understated the issues with the platform, or could not reasonably have been optimistic about fixing the problems. Apparently recognizing the insufficiency of these allegations, Plaintiffs assert that the Ninth Circuit does not require specification of the contents of internal reports to show scienter. Opp. at 22. But the lower court decision in *In re Intuitive Surgical Securities Litigation*, No. 5:13-CV-01920, 2014 WL 7146215 (N.D. Cal. Dec. 15, 2014), on which they rely holds only that such pleading is not necessary where other facts not present here– there, first-hand CW reports of what transpired in meetings involving the individual defendants – show scienter. *Id.* at *5.[16]

Plaintiffs also continue to rely on the unsurprising fact that the Individual Defendants assert knowledge of the matters on which they spoke, and contend that scienter can be inferred when a defendant "maintained [that] he knew what he was talking about." *See* Opp. at 20 & n.17 (citing *S. Ferry LP, v. Killinger*, 687 F. Supp. 2d 1248, 1260 (W.D. Wash. 2009)). But Plaintiffs cite no appellate case that has inferred scienter in such circular fashion. That the Individual Defendants at times indicated that facts supported their statements does not create an inference that they also must have

[16] The Ninth Circuit in *Intuitive Surgical* rejected internal report allegations, stating "[m]issing are allegations linking specific reports *and their contents* to the executives, not to mention the link between the witnesses and the executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (emphasis added). *See also Karam v. Corinthian Colls., Inc.*, No. CV 10-6523, 2012 WL 8499135, at *12 (C.D. Cal..Aug. 20, 2012) (similar).

known of *contrary* information when they spoke. In *S. Ferry*, unlike here, the speaker specifically and repeatedly represented to investors that he had *all* the information underpinning his predictions about risk, so to infer that he was aware of certain adverse information was fair. *See S. Ferry*, 687 F. Supp. 2d at 1258-59.

As to the "town hall" meetings, Defendants' initial brief shows that employees' telling Mr. Cappelli of their preference for the legacy system, at best, reflected an internal disagreement not giving rise to scienter. Mot. at 16 (citing SAC ¶¶ 64-65). Plaintiffs' response that there is no record of any such disagreement at the meetings misses the point: different company personnel can make different assessments of the same issue without any inference of scienter arising. *See Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 756 F. Supp. 2d 1113, 1131 (D. Ariz. 2010) (Defendants' challenged statements "do not claim or deny that a dispute took place . . . . There simply is no per se rule requiring companies to disclose every internal disagreement that occurs in the course of a *company's* decision-making process."); *In re Salomon Analyst Level 3 Litig.*, 373 F. Supp. 2d 248, 252 (S.D.N.Y. 2005) (internal disagreement does not suggest scienter).[17]

**B. The Core Operations Doctrine Does Not Apply**

Plaintiffs recite various allegations of the Complaint in an effort to show that the online platform was important to Apollo. But that is a red herring; Defendants do not dispute the importance of the platform to Apollo's business. Defendants do, however, refute Plaintiffs' contention that mere importance creates an inference that the Individual Defendants knew or recklessly disregarded the operational details alleged in the Complaint (which do not, in any event, render any statement false, *see supra*). In the Ninth Circuit, the core operations inference does not apply merely because the subject of the statement is important or even "critical" (to use Plaintiffs' preferred word); it applies only in specific, extreme factual circumstances, where it would be

[17] Of course, Plaintiffs point to no *facts* allegedly conveyed to Mr. Cappelli at the "town hall" meetings that he then misrepresented.

"absurd" for a defendant to deny she knew something, *Killinger*, 542 F.3d at 785-86; *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014), or where the individual defendants specifically admit involvement in the "minutia" of operations such as data monitoring, *Intuitive Surgical*, 759 F. 3d at 1062. Plaintiffs' own citations are distinguishable,[18] and their quibbles with the various cases relied on by Defendants are beside the point. For example, in their passing attempt to distinguish this Court's prior opinion declining to apply the core operations inference to Apollo, they offer only the cryptic squib "complaint lacked allegations of pervasive undisclosed issues," with no explanation of how that relates to the Court's core operations analysis. *See In re Apollo Grp., Inc. Sec. Litig.*, No. CV-10-1735, 2012 WL 2376378, at *6-7 (D. Ariz. June 22, 2012) (rejecting contention that scienter of individual defendants could be inferred from "the fact that enrollment represented the core of Apollo's revenue").[19]

Plaintiffs also urge (in their core operations argument, puzzlingly) that scienter can be inferred from the Defendants' continued positive statements regarding the classroom shortly before disclosing it would be replaced. Opp. at 23. But the last positive statements were in fact six months before announcement of the decision, and, in any event as noted above, there is simply no contradiction between expressing cautious optimism about fixing the issues with the existing platform and deciding to switch to another platform (a decision that would take considerable time to implement).

---

[18] For example, in *Berson v. Applied Signal Technology Inc.*, 527 F.3d 982 (9th Cir. 2008), the court found scienter only because it was "absurd" to suggest that the executives overseeing day to day operations would have been unaware of stop work orders affecting tens of millions of dollars of the company's work. *Id.* at 988. The citation to *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014), merely purports to quote from the case's general statement of the legal standard, and even then, omits the key introductory phrase: "***It may also be*** reasonable to conclude that high-ranking corporate officers have knowledge of the critical core operation of their companies." *Id.* at 569. That only begs the question. Plaintiffs are wrong to suggest that Defendants overstate the difficulty of showing scienter by core operations, and that the standard recently has become more relaxed. Opp. at 24 n.22 (emphasis added). Just last month, a California court applied *Berson* and found no scienter because it was not "absurd to suggest" the Company's top executives lacked knowledge of the risk at issue. *Knox v. Yingli Green Energy Holding Co. Ltd.*, 2017 WL 1013293, at *10 (C.D. Cal. Mar. 15, 2017).

[19] The alleged "core operation" here – the software platform – is one step removed from enrollment, and *a fortiori* core operations are not applicable here.

*See Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 646 (S.D.N.Y. 2015) (company's "deci[sion] to pursue another strategy does not make its earlier statements [about growth strategy] false"); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996) (similar). The discussion in *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014), of the temporal proximity between a statement and a contrary disclosure has nothing to do with the case because there is no inconsistent disclosure and, as noted above, the last statement was six months before the announcement. Similarly, *In re Grand Casinos Inc.*, No. Civ-4-96-890, 2000 WL 34030564, at *9 (D. Minn. Mar. 28, 2000) (reasonable to infer defendants knew about expense before payment of invoice), and *Dudley v. Haub*, No. 2:11-cv-05196, 2013 WL 1845519, at *12 (D.N.J. Apr. 30, 2013) (reasonable to infer defendants knew about impaired goodwill before write-down because impairment takes time to develop), are beside the point.[20]

### C. Defendants Have Neither Admitted Scienter Nor Applied the Wrong Standard

Plaintiffs claim that Defendants have admitted scienter by making the unremarkable acknowledgement, in a footnote in the core operations section of their opening brief, *see* Mot. at 19 n.24, that Mr. Cappelli was aware in general terms of issues with the platform. But Defendants made no concession of scienter; they clearly argued that the SAC fails to allege that Mr. Cappelli had knowledge of particular contemporaneous facts that rendered anything that he (or anyone else) said false at the time he said it. Mot. at 14-22, 19 n.24. Nor did Defendants argue for a wrong standard,

[20] Plaintiffs also suggest that the act of considering a third party platform supports an inference of scienter. Opp. at 3. But *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) has nothing to do with this case. There, the company's internal response showing great concern about a possible link between its product and a medical condition betrayed its assurances to the market. *Id.* at 49. Here, there is no first-hand witness account or document suggesting that, at the time it made any particular statement to the market about the status of the current platform, Apollo already had decided to scrap it. And even if it had, as noted elsewhere, there is simply no inconsistency. Plaintiffs' allegations, untethered to any time frame, are classic fraud by hindsight.

they never claimed Plaintiffs must show knowledge of each and every adverse fact pertaining to each and every statement at issue. This is a straw man.[21]

**D. Stock Sales Do Not Show Scienter**

Finally, as to stock sales, Plaintiffs offer only a single conclusory paragraph declaring that Mr. Swartz's sales were suspicious, unusual, inconsistent with his prior trading practices, and timed to maximize his personal benefit. Opp. at 25. However, Plaintiffs have no answer to any of the points Defendants made: (a) that the sales by Mr. Swartz took place a year or more before the first purported corrective disclosure and therefore were not suspicious in timing; (b) that Mr. Swartz could not possibly have known he was maximizing his profits because he had no idea what the future would bring for the stock price, and (c) that neither Mr. Cappelli nor Mr. Sperling sold at all during the Class Period (which one would expect if the insiders were engaging in fraud for personal gain) and, in fact, increased their holdings. Mot. at 21-22; see *In re Apollo Grp., Inc. Sec. Litig.*, No. CV-10-1735, 2011 WL 5101787, at *11 (D. Ariz. Oct. 27, 2011) (no scienter where "only four of the nine Defendants engaged in suspicious stock sales"); *San Leandro*, 75 F.3d at 814 (similar); *Acito v. IMCERA Grp.*, 47 F.3d 47, 54 (2d Cir. 1995) ("The fact that the other defendants did not sell their shares during the relevant class period undermines plaintiffs' claim that defendants delayed notifying the public so that they could sell their stock at a huge profit.") (internal quotation and marks omitted).[22]

---

[21] Plaintiffs also accuse Defendants of claiming that Plaintiffs must "prove[] that [the classroom] was incapable of being fixed." Opp. at 25. This is disingenuous argument by ellipsis; the passage at issue does not propose any burden of proof. What Defendants actually said, in response to allegations about employees' expressions of concern to Mr. Cappelli, is "That some employees who attended allegedly urged a return to the legacy platform hardly proves that it was incapable of being fixed." Mot. at 16. In other words, as noted above, the employees' complaints are not contrary to Mr. Cappelli's continued optimism.

[22] *American West*, the sole trading case Plaintiffs cite, fully supports Defendants. There, the court specifically noted that (unlike here) *all* the individual defendants had sold nearly all their stock (88 percent or more), and contrasted a case where only one insider had sold. *See No. 84 Employer- Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 939 (9th Cir. 2003) (citing *Ronconi v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001)). The *American West* court also relied on the close temporal proximity (unlike here) between the trades at issue and the corrective disclosures. *Id*.

The Court should dismiss the Complaint without further leave to amend.

DATED this 19th day of April, 2017.

OSBORN MALEDON, P.A.

By: s/ Brian K. Mosley
David B. Rosenbaum
Brian K. Mosley
2929 North Central Ave., Suite 2100
Phoenix, Arizona 85012-2793

WILMER CUTLER PICKERING HALE AND DORR, LLP
Michael G. Bongiorno, *Pro Hac Vice*
250 Greenwich Street
7 World Trade Center
New York, New York 10007

Peter A. Spaeth, *Pro Hac Vice*
James W. Prendergast, *Pro Hac Vice*
60 State Street
Boston, Massachusetts 02109

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2017, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

s/ Peggy L. Nieto

7113486