TIFFANY & BOSCO P.A.
RICHARD G. HIMELRICK (State Bar No. 004738)
2525 East Camelback Road, Seventh Floor
Phoenix, AZ 85016
Tel:    (602) 255-6000
rgh@tblaw.com

*Local Counsel for Lead Plaintiff*
*and the Settlement Class*

BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
JONATHAN D. USLANER (*pro hac vice*)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
jonathanu@blbglaw.com

*Counsel for Lead Plaintiff*
*and Lead Counsel for the Settlement Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Rameses Te Lomingkit, Individually And On Behalf Of All Others Similarly Situated, <br><br>                   Plaintiff, <br><br>    v. <br><br> Apollo Education Group, Inc. (F/K/A Apollo Group, Inc.); Peter V. Sperling; Gregory W. Cappelli; Brian L. Swartz; and William Pepicello, <br><br>                   Defendants. | No. 2:16-cv-00689-PHX-JAT <br><br> **CLASS ACTION** <br><br> **LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge:        Hon. James A. Teilborg <br> Courtroom:  503 <br> Date:         June 26, 2019 <br> Time:         1:30 p.m. |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES....................................................................................ii

NOTICE OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION ....................................... v

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 3

I.      The Proposed Settlement Warrants Final Approval ........................................ 3

        A.     Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class ................................................................................ 5

        B.     The Settlement Was Reached After Extended Arm's-Length Negotiations and After Mediation with an Experienced Mediator ................................. 5

        C.     The Relief that the Settlement Provides for the Settlement Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors ......................................................... 7

               1.     The Substantial Risks of Further Litigation Support Approval of the Settlement ............................................................................... 8

               2.     The Costs and Delays of Continued Litigation Support Approval of the Settlement ........................................................................ 11

               3.     All Other Factors Set Forth in Rule 23(e)(2)(C) Support Approval of the Settlement ...................................................................... 12

        D.     Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement ................................................................................ 13

II.     The Plan of Allocation Is Fair and Reasonable and Should Be Approved .................. 14

III.    The Settlement Class Should Be Certified .................................................. 15

IV.     Notice to the Settlement Class Satisfies the Requirements of Rule 23 and Due Process ...................................................................................... 16

CONCLUSION .................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Amgen Inc. Sec, Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................................ 13

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ...................................................................................... 6

*Bendon v. DTG Operations, Inc.*,
2018 WL 4976511 (C.D. Cal. Aug. 22, 2018) ................................................................ 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ............................................................................................. 6

*In re Celera Corp. Sec. Litig.*,
2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ................................................................ 10

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ................................................................... 6

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ................................................................................ 4, 13, 16

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................................... 5, 14

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ........................................................................................................ 10

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ........................................................................................................ 16

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ............................................................................................. 5

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................................................................. 3

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 4, 5

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ............................................................... 17

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................................ 15

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............................................................. 6

*Juvera v. Salcido*,
  2013 WL 6628039 (D. Ariz. Dec. 17, 2013) ........................................................... 3

*Kirkorian v. Borelli*,
  695 F. Supp. 446 (N.D. Cal. 1988) ....................................................................... 13

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 831 (N.D. Cal. 2017) .................................................................. 7

*Knapper v. Cox Commc'ns, Inc.*,
  329 F.R.D. 238 (D. Ariz. 2019) ............................................................................. 5

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................... 7

*Luna v. Marvell Tech. Grp.*,
  2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ...................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................. 7

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................................... 9

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
  2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ......................................................... 7

*Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 8, 13

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................... 6

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................ 4, 8

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................... 12

*In re Oracle Sec. Litig.*,
  1994 WL 502054 (N.D. Cal. June 18, 1994) ....................................................... 15

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................................... 8

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ............................................................................... 3

*Thomas v. MagnaChip Semiconductor Corp.*,
    2017 WL 4750628 (N.D. Cal. Oct. 20, 2017)................................................................ 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) ............................................................... 4

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................................................ 13

**STATUTES, RULES & REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23(c)(2)(B)................................................................................................... 16, 17
    Rule 23(e)(2)................................................................................................... 4, 13, 14
    Rule 23(e)(2)(A)....................................................................................................... 5
    Rule 23(e)(2)(B)....................................................................................................... 5
    Rule 23(e)(2)(C)............................................................................................. 7, 12, 13

## NOTICE OF LEAD PLAINTIFF'S MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (ECF No. 112) (the "Preliminary Approval Order"), Lead Plaintiff Government of Guam Retirement Fund ("GGRF" or "Lead Plaintiff") will and hereby does move the Court, before the Honorable James A. Teilborg, on June 26, 2019, at 1:30 p.m. in Courtroom 503 of the Sandra Day O'Connor U.S. Courthouse, 401 West Washington Street, Phoenix, AZ 85003, or at such other location and time as set by the Court, for entry of final Judgment approving the proposed Settlement of the above-captioned securities class action and an Order approving the proposed plan of allocation of the Net Settlement Fund (the "Plan of Allocation").

This Motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of Jonathan D. Uslaner in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses ("Uslaner Declaration" or "Uslaner Decl.") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be required by the Court.

The proposed Judgment and proposed Order will be submitted with Lead Counsel's reply submission on or before June 19, 2019.

Lead Plaintiff, on behalf of itself and the Settlement Class, respectfully submits this memorandum of law in support of its motion for final approval of the Settlement and approval of the Plan of Allocation.[1]

## PRELIMINARY STATEMENT

Subject to Court approval, Lead Plaintiff has agreed to settle all claims in the Action in exchange for a cash payment of $7.4 million, which has been deposited into an escrow account. Lead Plaintiff respectfully submits that the proposed Settlement is a favorable result for the Settlement Class in light of the significant litigation risks and that the Settlement satisfies all of the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure.

The Settlement was reached after extensive arm's-length negotiations between experienced counsel, which occurred while Plaintiffs' appeal from this Court's dismissal of the Action with prejudice was pending in the Court of Appeals.  The Parties participated in a telephonic conference call with a Ninth Circuit mediator, and the settlement negotiations included a full-day, in-person mediation session with Jed D. Melnick, Esq. of JAMS, an experienced mediator of securities class actions and other complex litigation.

Lead Plaintiff and Lead Counsel believe that the $7.4 million Settlement is in the best interest of the Settlement Class in light of the range of possible outcomes of the litigation, including the substantial risk that there might be no recovery at all.  While Lead Plaintiff had appealed the Court's ruling dismissing the Action to the Ninth Circuit and believes it presented meritorious arguments for reversal of that decision, it was far from certain that Lead Plaintiff would succeed on appeal.  If the appeal were unsuccessful, the claims would remain dismissed with prejudice and Plaintiffs and the Settlement Class would obtain no recovery in this Action. Moreover, even if the appeal had succeeded, Lead Plaintiff and the Settlement Class would still have faced numerous additional substantial risks in establishing liability through admissible

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated February 8, 2019 (ECF No. 109-1) (the "Stipulation") or the Uslaner Declaration.  Citations to "¶ __" in this memorandum refer to paragraphs in the Uslaner Declaration and citations to "Ex. __" refer to exhibits to the Uslaner Declaration.

evidence, including proving the falsity of the alleged statements and Defendants' scienter and in establishing loss causation and damages.  Lead Plaintiff would have to prevail at numerous stages beyond the current appeal, including on a litigated motion for class certification, a motion for summary judgment, and at trial before any recovery could be obtained.

At the time the agreement to settle was reached, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the Action.  Before the Settlement was agreed to, Plaintiffs' Counsel:  (i) conducted an extensive investigation into the alleged fraud, including a thorough review of SEC filings, analyst reports, conference call transcripts, press releases, company presentations, media reports, and other public information, and interviews with over 100 former employees of Apollo and other witnesses; (ii) drafted an initial complaint, a detailed Consolidated Complaint, and a substantially revised Amended Complaint; (iii) briefed and argued in opposition to two rounds of Defendants' motions to dismiss; (iv) fully briefed Plaintiffs' appeal from the Court's order dismissing the Action; (v) consulted with experts in the online education industry, loss causation, and damages; and (vi) engaged in extensive arm's-length settlement negotiations to achieve the Settlement, including preparing mediation statements and participating in a full-day mediation session with Mr. Melnick.  ¶¶ 5, 10-44.

Absent the Settlement, Plaintiffs faced the real prospect of affirmance of the Court's decision dismissing the Action with prejudice, in which case there would be no recovery for Plaintiffs and the class.  ¶¶ 46-48.  If successful on appeal, Plaintiffs faced the prospect of protracted and costly litigation on remand before any recovery could be obtained.  ¶¶ 49-59, 92. That continued litigation would entail substantial fact and expert discovery; additional contested motions, including a class certification motion and a summary judgment motion; extensive pre-trial preparations; a trial; post-trial motion practice; and likely ensuing appeals from any verdict for Plaintiffs at trial.  ¶¶ 49, 92.  The Settlement avoids these risks and delays while providing a certain and immediate benefit to the Settlement Class in the form of a $7.4 million cash payment.

The Settlement has the full support of the Court-appointed Lead Plaintiff GGRF, which is a sophisticated institutional investor of the type Congress favored when it passed the Private Securities Litigation Reform Act of 1995 ("PSLRA").  GGRF was actively involved in the litigation and the settlement negotiations, and it recommends approval of the Settlement.  *See* Declaration of Joe T. San Agustin ("San Agustin Decl."), Ex. 3, at ¶¶ 4-6.  Further, while the deadline to object to the Settlement has not yet passed, to date, no Settlement Class Members have objected to the Settlement.[2]

In light of these considerations and all other factors discussed below, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is fair, reasonable, and adequate and warrants final approval by the Court.  Additionally, Lead Plaintiff requests that the Court approve the Plan of Allocation, which is set forth in the Notice mailed to Settlement Class Members.  The Plan of Allocation, which was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert, provides a reasonable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims based on damages they suffered on purchases of Apollo common stock that were attributable to the alleged fraud.

## ARGUMENT

### I.   The Proposed Settlement Warrants Final Approval

The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Juvera v. Salcido*, 2013 WL 6628039, at *9 (D. Ariz. Dec. 17, 2013) ("The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions").  Settlements of cases such as this one contribute to the efficient utilization of scarce judicial resources and the speedy resolution of claims.  *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("'Settlement avoids the complexity, delay, risk and expense of continuing with the litigation

---

[2]   The deadline for the submission of objections is June 5, 2019.  Should any objections be received, Lead Counsel will address them in its reply papers, due on or before June 19, 2019.

and will produce a prompt, certain, and substantial recovery for the Plaintiff class.'").

A class action settlement should be approved if the court finds it "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), which involves a consideration of whether:

(A)   the class representatives and counsel adequately represented the class;

(B)   the proposed settlement was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account, [among other things,] the costs, risks, and delay of trial and appeal . . .; and

(D)   the proposal treats class members equitably relative to each other.

*Id.* In addition, the Ninth Circuit has held that district courts should consider the following eight factors in evaluating the substantive fairness of a class action settlement:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors, which became effective on December 1, 2018, and the factors identified in" Ninth Circuit case law).

The Ninth Circuit has cautioned that courts' review of settlements should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In other words, a settlement hearing should "not to be turned into a trial or rehearsal for trial on the merits," *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982), and a court "need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very

uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

### A.     Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, the court first considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  The adequacy requirement is satisfied if the representative parties and counsel have fairly and adequately protected the interests of the class.  *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 243 (D. Ariz. 2019).

Here, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class over the last three years in both their prosecution of the Action and in the negotiation and achievement of the Settlement.  Lead Plaintiff has claims that are typical of and coextensive with those of other Settlement Class Members, all of which are based on a common course of alleged wrongdoing by Defendants.  Lead Plaintiff has no interests antagonistic to the interests of other members of the Settlement Class.  To the contrary, Lead Plaintiff shares a common interest with all Settlement Class Members in obtaining the largest possible recovery from Defendants.  *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a sharing of interest" between representatives and absent class members). In addition, Lead Counsel is highly qualified and experienced in securities litigation (*see* BLB&G Firm Resume, Ex. 4A-3), and has actively pursued the claims on behalf of Apollo investors in this Court and on appeal.

### B.     The Settlement Was Reached After Extended Arm's-Length Negotiations and After Mediation with an Experienced Mediator

In reviewing a class action settlement, the Court next considers whether the settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  This includes consideration of (i) counsel's understanding of the strengths and weakness of the case based on factors such as "the extent of discovery completed and the stage of the proceedings," *Hanlon*, 150 F.3d at

1026; (ii) the presence or absence of any indicia of collusion, *see In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946-47 (9th Cir. 2011); and (iii) the involvement of a mediator.  All of these considerations support the approval of the Settlement here.

The Settlement was reached only after several months of arm's-length negotiations between experienced counsel and during the pendency of Plaintiffs' appeal.  The Parties participated in a conference call with a Ninth Circuit mediator, as well as a full-day, in-person mediation session with Jed D. Melnick of JAMS, an experienced mediator of securities class actions and other complex litigation.  ¶¶ 36-39.  Mr. Melnick has submitted a declaration describing his experience and the Parties' mediation efforts, including his opinion that the Settlement was a "reasonable resolution of the Action."  Melnick Decl. (Ex. 1) at ¶ 8.

As courts in this Circuit have explained, there is a "presumption of fairness and reasonableness of a settlement agreement" where, as in this case, the "agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013); *see also Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (finding settlement to be fair where it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator").  Moreover, the assistance of an experienced mediator like Mr. Melnick in the settlement process further "confirms that the settlement is non-collusive." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018); *see also In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) (approving Mr. Melnick as mediator and noting that his "involvement in the settlement supports the argument that it is non-collusive.").

Lastly, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching the agreement to settle.  Lead Counsel conducted a detailed substantive investigation by, among other things, reviewing SEC filings, analyst research reports, investor conference calls, press releases, media reports, and other public

material; consulting with several experts; and speaking with over 100 potential witnesses. ¶¶ 13-15.  Lead Counsel also performed extensive legal research in preparing the Consolidated Complaint and Amended Complaint, the briefing in opposition to Defendants' two rounds of motions to dismiss, and the briefing on the appeal.  ¶¶ 16-35.  Lead Plaintiff's and Lead Counsel's well-developed understanding of the strengths and weaknesses of the claims in the Action supports approval of the Settlement.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (class counsel's significant investigation, research, and work with experts, even where extensive formal discovery had not been completed, supported the "conclusion that the Plaintiffs had sufficient information to make an informed decision about the Settlement"); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.").

### C.   The Relief that the Settlement Provides for the Settlement Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors

The Court next considers whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).  In so doing, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).  The Court's assessment includes "considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *4 (N.D. Cal. Jan. 28, 2019) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

"Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have

won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

As discussed further below, continued litigation presented a number of very substantial risks. In addition, continued litigation would impose substantial additional costs on the Settlement Class and result in extended delays before a recovery, if any, could be achieved. The Settlement, meanwhile, provides a certain $7.4 million cash payment for the benefit of the Settlement Class and avoids these risks, costs, and delays of protracted litigation.

### 1.   The Substantial Risks of Further Litigation Support Approval of the Settlement

There were substantial risks that the class would recover little, if anything, in this Action. *First*, and foremost, the Action had already been dismissed in its entirety by the Court with prejudice. Plaintiffs appealed that ruling to the Ninth Circuit, and the appeal was fully briefed but not yet argued at the time the Parties' agreement to settle was reached. ¶¶ 32-35. While Plaintiffs believe that their appeal presented meritorious arguments for reversal, it was far from certain that the appeal would succeed. Defendants had vigorously contended, in opposition to the appeal, that the Court's lengthy dismissal order was well-reasoned and fully supported by Ninth Circuit law. ¶ 46. Obtaining a reversal of the Court's decision might have been particularly difficult because the appeal primarily challenged the Court's application of established law to a complex set of allegations. ¶ 47.

Indeed, the overall reversal rate for private civil appeals in the Ninth Circuit is just 14.3%, *see* ¶ 46, and, as discussed below, even following a reversal on appeal, Plaintiffs would have faced many significant additional risks before any recovery could be obtained. Accordingly, the risk of no recovery was very significant in this case.

Courts considering proposed settlements reached while an appeal is pending from dismissal of the action have recognized that a settlement in such a case is typically a very good result for the class, given that the most probable outcome of continued litigation is no recovery at all. *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 134-35 (S.D.N.Y. 2008) (approving the settlement of securities class action for $4.9 million, representing approximately 3% of the class's maximum damages, as reasonable where the class's claims had been dismissed with prejudice by the district court and were on appeal at the time of settlement, creating a "high risk of complete non-recovery").

*Second*, even if the appeal succeeded, Plaintiffs would still face a number of additional substantial risks in continued litigation in the District Court after remand. For example, assuming that the Ninth Circuit addressed only the Court's ruling on falsity, Lead Plaintiff would have faced the possibility of a renewed motion to dismiss by Defendants on scienter grounds, which the Court had not previously reached in its decisions due to its conclusion on falsity. ¶ 49. Even if successful on Defendants' renewed motion to dismiss on scienter grounds, Plaintiffs would still have to prevail on a motion for summary judgment, a litigated motion for class certification, at trial, and on any appeals from any plaintiff verdict. *Id.* At each of these stages, Plaintiffs would face significant risks related to establishing liability, including proving the falsity of the alleged statements and Defendants' scienter, loss causation, and damages.

To establish scienter, Plaintiffs would need to overcome Defendants' argument that they lacked detailed and timely information about performance issues with the Online Classroom. ¶ 52. Plaintiffs would also have had to defeat Defendants' argument that they had no motive to mislead investors. ¶ 53. In demonstrating an absence of motive, Defendants could point to the fact that Mr. Cappelli, Apollo's CEO and the executive who made most of the statements at issue, and Mr. Sperling, Apollo's chairman, were not alleged to have sold any Apollo stock during the Class Period. *Id.* Defendants could also point to the fact that neither the SEC nor

any other government agency pursued any enforcement action related to the claims asserted in the Action. *Id.*

Moreover, even assuming that Plaintiffs overcame the above risks and successfully established liability, Plaintiffs would have confronted considerable additional challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants would have contended that the declines in the price of Apollo common stock identified by Lead Plaintiff were not caused by revelations that Defendants' earlier statements about the Classroom were false and misleading, but rather resulted from the disclosure of other information about Apollo's business on those dates. ¶¶ 55-56. Further, Defendants would argue that, even if some of the stock price declines on those dates could be considered to have been caused by the revelation of the truth concerning the past alleged misstatements, the non-fraud-related information revealed on those dates had a more substantial negative affect on the price of Apollo's common stock on those dates. ¶ 57.

The resolution of these disputed issues regarding damages and loss causation would have come down to a "battle of experts," and there is little doubt that Defendants would have been able to present well-qualified experts who would opine that the class had little or no damages. As courts have long recognized, the uncertainty as to which side's expert's view might be credited by the jury presents a substantial litigation risk. *See, e.g., In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to the "battle of the experts" weighed in favor of settlement approval); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.").

*Third*, to prevail in the Action even assuming a successful appeal, Lead Plaintiff would also have to prevail on a motion to certify the class. Defendants undoubtedly would have

argued that the Class Period should be shortened if, for example, identified statements at the beginning of the Class Period were ultimately found non-actionable or if Defendants' disclosure of the existence of some problems with the new Classroom was found to be a full disclosure of the allegedly omitted facts.  ¶ 58.  Any such changes to the length of the Class Period could have dramatically reduced the total potential damages for the class.  *Id*. Accordingly, the risk and uncertainty surrounding certification of the class also support approval of the Settlement.  *See Bendon v. DTG Operations, Inc.*, 2018 WL 4976511, at *5 (C.D. Cal. Aug. 22, 2018).

### 2.    The Costs and Delays of Continued Litigation Support Approval of the Settlement

A settlement at this stage also ensures that the Settlement Class obtains an immediate and certain benefit, without incurring the expenses and delay of continued litigation.  Indeed, if Plaintiffs had prevailed on their appeal, the class still would have faced a lengthy course of additional litigation before any litigated judgment could be reached.   Among other things, Plaintiffs would have been required to conduct extensive fact and expert discovery, which had not yet commenced in this Action as a result of the PSLRA discovery stay.  ¶ 92.  In addition, after the close of discovery, Defendants invariably would move for summary judgment.  *Id*.  If the class's claims survived the motion for summary judgment, substantial expenses would need to be incurred on behalf of the class in preparing the case for trial.  *Id*.  The trial itself would be expensive and uncertain.  *Id*.  Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of post-trial motions, post-trial challenges to individual class members' damages, and appeals.  *Id*.

In short, any litigated recovery would only be achieved after lengthy litigation that reasonably would be expected to take a number of years to complete and be costly for the class. In contrast to costly, lengthy, and uncertain litigation, the Settlement provides an immediate, significant, and certain recovery of $7.4 million for the Settlement Class.

### 3.      All Other Factors Set Forth in
### Rule 23(e)(2)(C) Support Approval of the Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors also supports approval of the Settlement.

*First*, the procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods that have been widely used in securities class action litigation.  As detailed in the Stipulation (¶¶ 23-29) and the Notice (¶¶ 51, 57), the proceeds of the Settlement will be distributed to class members who submit eligible Claim Forms with required supporting documentation to the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), which is an independent company with extensive experience handling the settlement administration of securities class actions.  Under the supervision of Lead Counsel, A.B. Data will review and process the claims and provide claimants with an opportunity to cure any claim deficiencies or request review of the denial of their claims by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

*Second*, the relief provided for the Settlement Class in the Settlement is also adequate when the terms of the proposed award of attorneys' fees are taken into account.  As discussed in the accompanying memorandum, Lead Counsel seeks a fee of 25% of the Settlement Fund, which is the standard or "benchmark" fee award in common cases in the Ninth Circuit.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  The requested fee, to be paid upon approval by the Court, is reasonable in light of the efforts of Plaintiffs' Counsel and the risks in the litigation.  Moreover, approval of attorneys' fees in this case is entirely separate from approval of the Settlement.  *See* Stipulation ¶ 18.

*Lastly*, Rule 23(e)(2) asks the court to consider the fairness of the proposed settlement in light of any agreements required to be identified under Rule 23(e)(3).  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).  Here, the only such agreement (other than the Stipulation itself) is the Parties' agreement setting forth the conditions under which Apollo would be able to terminate the Settlement if the number of Settlement Class Members who request exclusion from the Settlement Class reaches a certain threshold.  This type of agreement is a standard provision in securities class actions and "does not render the settlement unfair."  *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *7 (N.D. Cal. Oct. 20, 2017).

### D.  Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement

Two additional factors considered in assessing the Settlement are "the experience and views of counsel" and "the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575.[3]  Both of these additional factors support the Settlement.

As courts in this Circuit explain, "[t]he recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *see DirectTV*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel . . . because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation'").  Here, Lead Counsel – based on a thorough understanding of the Action – concluded that the Settlement represents a favorable outcome for Settlement Class Members in light of the range and probability of potential outcomes of the litigation.

Likewise, the positive reaction of the Settlement Class to the Settlement is another factor that favors approval of the Settlement.  *See In re Amgen Inc. Sec, Litig.*, 2016 WL 10571773, at

---

[3] The final factor – "the presence of a governmental participant" – was not a relevant factor for or against the Settlement under the circumstances of this case.  *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *10 (N.D. Cal. Apr. 1, 2011) (lack of government entity involved in case rendered factor inapplicable to the analysis).

*4 (C.D. Cal. Oct. 25, 2016).  Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, A.B. Data, sent a total of 59,288 copies of the Notice Packet to potential Settlement Class Members and nominees.  *See* Miller Decl. (Ex. 2) ¶ 8.  In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire* on April 1, 2019.  *See id.* ¶ 9.  The Notices set out the essential terms of the Settlement and informed potential Settlement Class Members of, among other things, their right to opt out of the Settlement Class or object to any aspect of the Settlement, as well as the procedure for submitting Claim Forms.  While the June 5, 2019 deadline for Settlement Class Members to exclude themselves or object to the Settlement has not yet passed, to date, no objections to the Settlement or the Plan of Allocation have been received, *see* Uslaner Decl. ¶ 66, and only one request for exclusion from the Settlement Class has been received, *see* Miller Decl. ¶ 12.[4]  The absence of any objections or a significant number of requests for exclusion supports approval of the Settlement here.

*     *     *

In sum, all of the factors to be considered under Rule 23(e)(2) support a finding that the Settlement is fair, reasonable, and adequate.  In contrast to costly, lengthy, and uncertain litigation, the Settlement provides an immediate, significant, and certain recovery of $7.4 million for members of the Settlement Class.

## II.    The Plan of Allocation Is Fair and Reasonable and Should Be Approved

In addition to seeking final approval of the Settlement, Lead Plaintiff seeks approval of the proposed plan for allocating the proceeds of the Settlement (the "Plan of Allocation").

The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole—the plan must be "fair, reasonable, and adequate."  *Class Plaintiffs*, 955 F.2d at 1284-85.  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *See In*

---

[4] As provided in the Preliminary Approval Order, Lead Plaintiff will file reply papers on June 19, 2019, after the deadline for requesting exclusions or objecting has passed, that will address all requests for exclusion and any objections that may be received.

*re Heritage Bond Litig.*, 2005 WL 1594403, at \*11 (C.D. Cal. June 10, 2005).  Moreover, "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*, 1994 WL 502054, at \*1 (N.D. Cal. June 18, 1994).

Lead Counsel developed the Plan of Allocation, which is set forth at pages 8 to 10 of the Notice mailed to Settlement Class Members, with the assistance of Lead Plaintiff's damages expert.  ¶ 68.  The Plan provides for the distribution of the Net Settlement Fund to Settlement Class Members on a *pro rata* basis based on the extent of their injuries attributable to the alleged fraud.  ¶ 76.  In developing the Plan of Allocation, Lead Plaintiff's expert calculated the estimated amount of artificial inflation in the per-share closing prices of Apollo's common stock that was allegedly proximately caused by Defendants' alleged false and misleading statements and omissions.   ¶ 70.   To calculate the estimated artificial inflation, the expert considered the price changes in Apollo common stock in reaction to the public disclosures that allegedly corrected the alleged misrepresentations and omissions, adjusting for price changes attributable to market or industry factors.  *Id.*

Lead Plaintiff and Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who suffered losses as a result of the conduct alleged in the Amended Complaint.   ¶ 76. Moreover, as of May 22, 2019, more than 59,000 copies of the Notice, which contains the Plan of Allocation, and advises Settlement Class Members of their right to object to the Plan if they wish to do so, have been mailed to potential Settlement Class Members, *see* Miller Decl. ¶ 8, and, to date, no objections to the Plan of Allocation have been received.  *See* ¶ 77.  For all of these reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Plan of Allocation.

## III.   The Settlement Class Should Be Certified

In connection with the Settlement, the Parties have stipulated to the certification of the Settlement Class for purposes of the Settlement.   As set forth in detail in Lead Plaintiff's

motion for preliminary approval of the Settlement, the Settlement Class satisfies all the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  *See* ECF No. 109 at 11-15; *see also* Preliminary Approval Order (ECF No. 112) at ¶¶ 2-3 (finding that the Court will likely be able to certify the Settlement Class at final approval).  None of the facts regarding certification of the Settlement Class have changed since Lead Plaintiff submitted its motion for preliminary approval, and there has been no objection to certification.  Accordingly, Lead Plaintiff respectfully requests that the Court certify the Settlement Class under Rules 23(a) and (b)(3) for the reasons set forth in its earlier motion.  *See* ECF No. 109 at 11-15.

## IV.    Notice to the Settlement Class Satisfies the Requirements of Rule 23 and Due Process

The Notice provided to the Settlement Class satisfies all the requirements of due process, the PSLRA, and Rule 23, which require that class members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).  Notice of a class action settlement "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *See Churchill*, 361 F.3d at 575; *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (same).

Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfies these standards here.  As noted above, in accordance with the Court's Preliminary Approval Order, A.B. Data, the Court-approved Claims Administrator, began mailing copies of the Notice Packet to potential Settlement Class Members and nominees on March 21, 2019.  *See* Miller Decl. ¶¶ 3-5.  As of May 22, 2019, A.B. Data had mailed 59,288 copies of the Notice Packet by first-class mail to potential Settlement Class Members and nominees.  *See id.* ¶ 8.  In addition, A.B. Data arranged for the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire* on April 1, 2019.  *See id.* ¶ 9.  A.B. Data also established a dedicated settlement website, www.ApolloEducationGroupSecuritiesLitigation.com, to provide potential Settlement

Class Members with information concerning the Settlement and access to copies of the Notice and Claim Form, as well as copies of other documents such as the Stipulation and Preliminary Approval Order. *Id*. ¶ 11. Copies of the Notice and Claim Form are also available on Lead Counsel's website, www.blbglaw.com. Uslaner Decl. ¶ 65.

This combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmission over a newswire, and publication on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21, 2016) (approving similar notice program).

## **CONCLUSION**

For the reasons stated herein and in the Uslaner Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.

Dated:  May 22, 2019

Respectfully submitted,

By:  /s/ Jonathan D. Uslaner
     Jonathan D. Uslaner
BERNSTEIN LITOWITZ BERGER &
   GROSSMANN LLP
12481 High Bluff Drive, Suite 300
San Diego, CA 92130-3582
Tel:    (858) 793-0070
jonathanu@blbglaw.com

*Lead Counsel for Lead Plaintiff and the
Settlement Class*

Richard G. Himelrick
(State Bar No. 004738)
TIFFANY & BOSCO P.A
2525 East Camelback Road, Seventh Floor
Phoenix, AZ 85016
Tel:    (602) 255-6000
rgh@tblaw.com

*Local Counsel for Lead Plaintiff
and the Settlement Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jonah H. Goldstein
Robert R. Henssler Jr.
Matthew Balotta
ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel:    (619) 231-1058
jonahg@rgrdlaw.com
bhenssler@rgrdlaw.com
mbalotta@rgrdlaw.com

*Counsel for Additional Plaintiffs Rameses Te
Lomingkit and National Shopmen Pension
Fund*

#1293205